O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>                                        Plaintiff,<br><br>        v.<br><br>QUALCOMM INCORPORATED,<br><br>                                       Defendant.<br>_____<br>AND RELATED CROSS-ACTION | CASE NO: SACV 05-467 JVS(RNBx)<br><br>THIRD AMENDED AND RESTATED PERMANENT INJUNCTION |

In light of the Federal Circuit's decision in Broadcom Corporation v. Qualcomm Incorporated, __ F.3d __, Docket Nos. 2008-1199, -1271 -1272, Slip Opinion (Fed. Cir. Sept. 24, 2008), the Court now amends the Second Amended and Restated Injunction *nunc pro tunc* as follows:

I.      The '686 Patent.

      This provision of the Injunction is deleted.

1

II. <u>The '317 Patent.</u>

IT IS FURTHER ORDERED that the defendant Qualcomm Incorporated, any of its subsidiaries, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any or all of them who receive actual notice of this Third Amended and Restated Permanent Injunction (all of said individuals and entities being referred to herein as "Qualcomm Parties") are hereby permanently enjoined from infringing, inducing the infringement of, claims 1, 6, 9, and/or 12 of U.S. Patent No. 6,657,317 ("'317 Patent"), until the expiration of the patent, by:

(a) making, using, importing, selling, and/or offering to sell in the United States MSM6550 chipsets capable of operating on CDMA2000 1x and 1xEV-DO networks, or any device not more than colorably different therefrom (collectively, the "'317 Infringing Products"), or any device that includes any '317 Infringing Product (including, without limitation, cellular telephone handsets, Form Factor Accurate ("FFA") devices, and Subscriber Unit Reference ("SURF") devices); and/or

(b) assisting others in making, using, importing, selling, and/or offering to sell in the United States any '317 Infringing Product, by engaging in activities including, without limitation, the following: (i) selling, offering for sale, or providing to third parties any device that is to be included in or used with any '317 Infringing Product; (ii) developing, designing, or manufacturing any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product; (iii) advertising, marketing, or otherwise promoting any '317 Infringing Product or any device that is to be included in or used with any '317

Infringing Product; (iv) entering or fulfilling product orders, or setting, determining, or approving terms of sale, for any device that is to be included in or used with any '317 Infringing Product; (v) providing customer service or other technical support relating to any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product; (vi) negotiating or entering into licensing, representative, reseller, or distributor agreements relating to any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product; (vii) writing, modifying, or updating software for any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product; (viii) designing or modifying circuits for use in any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product; (ix) writing, modifying, or updating hardware description language code for use in the design or creation of any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product; (x) taping out any device that is to be included in or used with any '317 Infringing Product; and/or (xi) preparing documentation regarding the operation, use, or intended use of any '317 Infringing Product or any device that is to be included in or used with any '317 Infringing Product;

PROVIDED, HOWEVER, that with respect to '317 Infringing Products, handsets containing the infringing products, and chips and handsets not more than colorably different (i) which were on sale in or imported into the United States on or before May 29, 2007,[1] and (ii) with regard only to existing or prior customers of '317 Infringing Products as of May 29, 2007 (which status shall be determined

---

[1] With respect to each '317 and '010 Infringing Product, such Infringing Product shall deemed to have been sold or imported into the United States if the sale resulted in an intermediate delivery outside the United States for purposes of manufacture, modification, incorporation into another device, or for like purposes, so long as the ultimate purpose of the transaction was for sale or importation of the Infringing Product into the United States.

3

separately with respect to each '317 Infringing Product), the injunction against activities listed in paragraphs (a) and (b) above shall be stayed until January 31, 2009, so long as:

    (a)    Qualcomm pays to Broadcom an ongoing royalty, consisting of 4.5% of all revenues received by Qualcomm for sales occurring after May 29, 2007 of MSM6550 chipsets and chipsets not more than colorably different therefrom that are sold in or imported into the United States;[2] and

    (b)    Qualcomm provides Broadcom with periodic reports from which Broadcom can assess the proper royalties owed, detailing at least the volume of, and revenue derived by Qualcomm from, any post-May 29, 2007 sales of '317 Infringing Products.

III.   <u>The '010 Patent.</u>

IT IS FURTHER ORDERED that the Qualcomm Parties are hereby permanently enjoined from infringing, or inducing the infringement of, claims 1, 2, 3, and/or 7 of U.S. Patent No. 6,389,010 ("'010 Patent"), until the expiration of the patent, by:

    (a)    making, using, importing, selling, and/or offering to sell in the United States QChat software and/or any telephone or telephone system (including, without limitation, cellular telephone handsets, FFA devices, and SURF devices) containing QChat software and an MSM5100, MSM5105, MSM6100, MSM6500,

---

[2] The Court specifically excludes from the royalty base revenues which Qualcomm may receive from SULA licenses. The royalty basis is limited to revenues from chipsets.

or MSM6800 baseband chip, or any device not more than colorably different therefrom (collectively, the "'010 Infringing Products"); and/or

    (b)    assisting others in making, using, importing, selling, and/or offering to sell in the United States any '010 Infringing Product, by engaging in activities including, without limitation, the following: (i) selling, offering for sale, or providing QChat software and/or hardware to third parties; (ii) advertising, marketing, or otherwise promoting QChat software and/or hardware; (iii) entering or fulfilling product orders, or setting, determining, or approving terms of sale, for QChat software and/or hardware; (iv) providing customer service and/or other technical support relating to QChat software and/or hardware; (v) negotiating or entering into licensing, representative, reseller, or distributor agreements relating to QChat software and/or hardware; (vi) developing, designing, modifying, testing, demonstrating, or manufacturing QChat software and/or hardware or products substantially similar to QChat software and/or hardware; and/or (vii) making QChat software available for download.

    PROVIDED, HOWEVER, that with respect to '010 Infringing Products (i) which were on sale in or imported into the United States on or before May 29, 2007,[3] and (ii) with regard only to existing or prior customers of '010 Infringing Products as of May 29, 2007 (which status shall be determined separately with respect to each '010 Infringing Product), the injunction against activities listed in paragraphs (a) and (b) above shall be stayed until January 31, 2009, so long as:

    (a)    Qualcomm pays to Broadcom an ongoing royalty, consisting of 15%

---

[3]With respect to software encompassed within the '010 Infringing Products, this sunset provision shall be limited to versions of software which had been delivered, accepted, and paid for as of May 29, 2007.

of all revenues received by Qualcomm for sales occurring after May 29, 2007 of '010 Infringing Products, including revenues received from pre- and post-commercialization development fees and licenses, that are sold in, or imported into, or licensed in the United States; and

(b)     Qualcomm provides Broadcom with periodic reports from which Broadcom can assess the proper royalties owed, detailing at least the volume of, and revenue derived by Qualcomm from, any post-May 29, 2007 sales of '010 Infringing Products.

IV.   Territorial Limitation.

With respect of activities enjoined in Sections II and III, this Third Amended and Restated Permanent Injunction shall not extend to activities engaged in inside or outside the United States which have no effect on the manufacture, use, importation, sale and/offering of '317 Infringing Products or '010 Infringing Products in the United States.

V.   Permissible "Design Around" Efforts.

Nothing is this Third Amended and Restated Permanent Injunction shall prohibit the Qualcomm Parties from engaging in the design, development, or testing of any product or service which does not infringe the '317 Patent and/or the '010 Patent. Nothing is this Third Amended and Restated Permanent Injunction shall prohibit the Qualcomm Parties from engaging in modification of any '317 Infringing Product or '010 Infringing Product so as to eliminate infringement, nor from engaging in design, development, or testing for said purpose. Nothing is this

Third Amended and Restated Permanent Injunction shall prohibit the Qualcomm Parties from importing into the United States any '317 Infringing Product or '010 Infringing Product solely for the purpose of engaging in design, development, or testing so as to eliminate infringement and/or effecting modification to eliminate infringement.

Nothing is this Third Amended and Restated Permanent Injunction shall prohibit the Qualcomm Parties from selling or importing into the United States a '317 or '010 Infringing Product which has been permanently modified so that it no longer infringes.

VI.   Permissible Technical Support.

Nothing is this Third Amended and Restated Permanent Injunction shall prohibit the Qualcomm Parties from providing service or technical support, including without limitation software debugging, for a '317 or '010 Infringing Product for which Broadcom has been compensated under the jury's Verdict or for which Qualcomm is obligated to and makes a timely royalty payments in accordance with the sunset provisions in Sections II and III, supra.

VII.   Verizon Adjustment.

In view of the parties' stipulation dated January 9, 2008, and the Court's Order thereon dated February 4, 2008, this provision in the Preliminary Injunction has been satisfied, and is therefore moot.

VIII.   Notice and Accounting for Royalties.

IT IS FURTHER ORDERED that, within 15 days from the date of this signed Third Amended and Restated Permanent Injunction, Qualcomm shall provide a copy of this singed Third Amended and Restated Permanent Injunction to (i) its officers, directors, agents, servants, representatives, attorneys, employees, subsidiaries and affiliates, and those persons in active concert or participation with them. To the extent not provided in accordance with subsection (i), Qualcomm will also provide a copy of this Third Amended and Restated Permanent Injunction to: (ii) companies that design or manufacture cellular devices using Qualcomm's chips; U.S. wireless carriers on which such devices operate; all distributors with whom Qualcomm has distributor agreements; all parties to whom Qualcomm has granted a patent license; and all parties to whom Qualcomm has granted a license to any of the following software:  AMSS, DMSS, QChat, CMX, QBT, QVM and MMV.

All royalties shall begin accruing May 29, 2007.  All payments and periodic reports due pursuant to this Third Amended and Restated Permanent Injunction shall begin on March 31, 2008 and shall thereafter be made on the last business day of each calendar quarter.  Payments not made within 14 days of the date due shall accrue interest at the rate of 10%, compounded monthly.

IX.   Continuing Jurisdiction.

The Court specifically retains jurisdiction to enforce, modify, extend, or terminate this Third Amended and Restated Permanent Injunction as the equities may require upon a proper showing, and to adopt procedures for resolution of any

1 dispute whether a product not specifically covered by this Third Amended and
2 Restated Permanent Injunction "colorably infringes" any of the infringed claims
3 under the patents in suit enumerated above.

Originally Dated: March 11, 2008

Amended Date: September 25, 2008

_____
Hon. James V. Selna
United States District Court Judge