O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>Defendant. | CASE NO: SACV 05-467 JVS(RNBx)<br><br>Order Granting Motion for Return of '686 Sunset Royalties |

Defendant Qualcomm Incorporated ("Qualcomm") seeks the return of royalties it paid to Plaintiff Broadcom Corporation ("Broadcom") on U.S. Patent No. 6,847,686 ("the '686 patent") pursuant to an injunction that has since been reversed as to the '686 patent. Broadcom opposes the motion. The motion is GRANTED.

1

I.	Background

Broadcom and Qualcomm compete in the chipset market for cell phones and other mobile radio devices.  On May 29, 2007, a jury found that Qualcomm had directly infringed and induced infringement of claim 3 of Broadcom's '686 patent, relating to video compression technology on cell phones.  (Special Verdict, Question Nos. 9, 10, Docket No. 686.)  On December 31, 2007, this Court entered a permanent injunction against Qualcomm on three patents in suit, although it provided  "sunset" provisions allowing continued sales pursuant to a mandatory royalty through January 31, 2009.  (Injunction Opinion, Docket No. 995.)  As to the '686 patent, the sunset provision read as follows:

> PROVIDED, . . . that with respect to '686 Infringing Products (I) capable of operating on a CDMA2000 1xEV-DO network, (ii) which were on sale in or imported into the United States on or before May 29, 2007, and (iii) with regard only to existing or prior customers of '686 Infringing Products as of May 29, 2007 (which status shall be determined separately with respect to each '686 Infringing Product), the injunction against activities listed in paragraphs (a) and (b) above shall be stayed until January 31, 2009, so long as:
>
> 	(a) Qualcomm pays to Broadcom an ongoing royalty, consisting of 6% of all revenues received by Qualcomm for sales occurring after May 29, 2007 of '686 Infringing Products that are sold in or imported into the United States . . . .

(Id. at 3.)  On January 28, 2008, the Court denied Qualcomm's motion to stay the permanent injunction.  (Motion Ruling, Docket No. 1087.)  The injunction was subsequently amended twice, but remained the same as to the '686 sunset

2

provision. (First Amended Injunction, Docket No. 1072, at 3-4 (Feb. 5, 2008); Second Amended Injunction, Docket No. 1143, at 3-4 (Mar. 11, 2008).) Qualcomm appealed to the Federal Circuit. (First Notice of Appeal, Docket No. 1073; Second Notice of Appeal, Docket No. 1153.)

While its appeal was pending, Qualcomm made two quarterly royalty payments, one in April and another in July 2008, pursuant to the '686 sunset provision. All told, Qualcomm paid Broadcom approximately $11 million in royalties on the '686 patent. (Brooks Decl., Exs. 2 & 3.) Qualcomm expressly reserved its right to the return of these royalties if it prevailed on appeal:

> [T]he underlying liability determinations are currently on appeal to the Federal Circuit. In the event that . . . the underlying liability determinations are reversed, in whole or in part, Broadcom will be obligated, consistent with the Federal Circuit's ruling, to return all or a portion of this payment, plus interest, to Qualcomm. Qualcomm reserves all of its rights with respect to repayment of this amount.

(Sage Decl., Exs. A & B.) On September 24, 2008, the Federal Circuit reversed the jury's verdict as to the '686 patent, and held that patent invalid under a proper construction of claim 3. Broadcom Corp. v. Qualcomm Inc., __ F.3d __, 2008 WL 4330323, at *18-19 (Fed. Cir. 2008). The circuit also "reverse[d] the injunction . . . . as . . . to the '686 patent and remand[ed] . . . so that the injunction . . . may be adjusted in light of our reversal of the jury verdict of infringement." Id. at 18. The day after the decision was handed down, this Court issued an amended injunction, which deleted the earlier provisions regarding the '686 patent. (Third Amended and Restated Injunction, Docket No. 1377.) Presently before the Court is

Qualcomm's motion for the return of the '686 sunset royalties in light of the circuit decision.

II.     Discussion

      This case appears to be a matter of first impression.  The issue is whether Qualcomm may recover royalties paid pursuant to a court order that was subsequently reversed.  The parties cite no authority adjudicating this precise issue, and the Court has found of none.  Instead, the parties proceed by analogy.  Qualcomm contends that the return of the '686 sunset royalties is warranted under the law of restitution, as well as the law of contempt.  Broadcom counters that Qualcomm has already received the precise benefits for which it paid: the stay of an otherwise immediate injunction, and an implied license for claim 3 of the '686 patent through the date of the Federal Circuit's decision.  The Court will address each argument in turn.

      A.     Law of Restitution

      The Court first considers whether the respective equities of Qualcomm and Broadcom warrant restitution of the '686 sunset royalties.  It is black letter law that when money is paid pursuant to a court order that is subsequently reversed, the disadvantaged party has a right to restitution.  In <u>Baltimore & Ohio R.R. v. United States</u>, 279 U.S. 781, 785-86 (1929), the Supreme Court found that railroads benefitting from an invalid order of the Interstate Commerce Commission were under an obligation to make restitution after the reversal of the decree sustaining that order.  In relevant part, the Court held:

> The right to recover what one has lost by the enforcement of a

4

judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done.

Id. at 786. This holding was reaffirmed by the Supreme Court in United States v. Morgan, 307 U.S. 183, 197 (1939), and has been followed in the Ninth Circuit, see Caldwell v. Puget Sound Elec. Apprenticeship and Training Trust, 824 F.2d 765, 767 (9th Cir. 1987). Under Morgan, a court must restore that which has been "given or paid under the compulsion of a judgment" where "its judgment has been set aside and justice requires restitution." 307 U.S. at 197.

At first blush, this case invites a straightforward application of the equitable principles of restitution. By court order, Qualcomm paid Broadcom royalties on the '686 patent. The Federal Circuit later held that patent invalid. Qualcomm now seeks the return of royalties because, in light of the circuit decision, there was never a valid basis for those payments. Qualcomm contends that restitution is necessary to avoid Broadcom's unjust enrichment. Morgan appears to control this issue. But Broadcom asserts that Morgan is inapposite, because Qualcomm was under no obligation to pay royalties. Instead, Broadcom asserts, Qualcomm faced a choice: either immediately cease to infringe the then-valid patent '686, or purchase a stay of that injunction. This interpretation accords with the terms of the injunction, which would be "stayed until January 31, 2009, so long as . . . Qualcomm pays Broadcom an ongoing royalty." (Docket No. 1143.)

According to Broadcom, Morgan only applies in cases of "compulsion."[1]

---

[1] "What has been given or paid under the compulsion of a judgment the court will restore

5

The Court agrees that Morgan cannot be applied literally on these facts, as there was no compulsion, per se. But the Court disagrees that the reasoning of Morgan – and the equitable principles of restitution – should be so limited to cases of compulsion. First, the meaning of "compulsion" in Morgan is far from clear. Even before Morgan, "the concept of compulsion ha[d] been extended to cases where the error of the decree was one of inaction rather than action . . . ." Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301, 309 (1935) (citing Baltimore, 279 U.S. 781). It likewise may be possible to extend the concept to this case as well, where Qualcomm's choice between an immediate injunction and a partial stay may well have been illusory. On appeal, Qualcomm argued that "the injunction [would] disrupt Qualcomm's ongoing business model with CDMA carriers and [that] the sunset provisions [would] not allow sufficient time to develop design-around technology." Broadcom Corp., 2008 WL 4330323, at *15. Thus, the absence of compulsion, at least in some form, is not a foregone conclusion in this case.

The law of restitution also has broad application in cases where money is transferred pursuant to a court order that is subsequently reversed. The Eighth Circuit, for example, has cited Morgan and related precedents for the proposition that "courts have frequently held that, when a benefit has been conferred in compliance with a judgment subsequently reversed, restitution may be required." Iowa Elec. Light and Power Co. v. Atlas Corp., 654 F.2d 704, 706 (8th Cir. 1981) (denying restitution because a "consent order" merely embodied the terms of a

---

when its judgment has been set aside and justice requires restitution." Morgan, 307 U.S. at 197 (emphasis supplied). Similarly, Baltimore spoke of "enforcement," as in the "right to recover what one has lost by the enforcement of a judgment." 279 U.S. at 786 (emphasis supplied).

voluntary agreement between the parties) (emphasis supplied).[2] The difference between "compulsion" and "compliance" is more than mere semantics. The emerging Restatement of Restitution, now in draft, provides that "[a] transfer . . . of property, in compliance with <u>or otherwise in consequence of</u> a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution to the extent necessary to avoid unjust enrichment." Restatement (Third) of Restitution & Unjust Enrichment § 18 (T.D. No. 1, 2001) (emphasis supplied).[3] The essential factor appears to be that the transfer occurred as a consequence of the court order. The '686 royalty payments were a but-for consequence of the injunction, even if Qualcomm was not required to make them. This should be sufficient for restitution.

Third, the draft Restatement specifically anticipates and addresses Broadcom's contention on this issue: "[p]arties resisting restitution sometimes assert that the judgment debtor has made a 'voluntary payment' (for instance, in electing to pay a judgment rather than post a bond), but the contention is uniformly rejected." <u>Id.</u> cmt. c. Broadcom's cited cases – <u>W.R. Grace</u> and <u>Meyers</u> – are also

---

[2] This case is distinguishable from <u>Atlas</u>. Here, Qualcomm and Broadcom each submitted a proposed set of injunction terms, and the Court essentially adopted Broadcom's proposal. Thus, the '686 injunction cannot be treated as a "voluntary agreement entered under no compulsion from the court." <u>Atlas</u>, 654 F.2d at 707.

[3] Courts routinely cite to draft Restatements as persuasive authority. <u>See, e.g.</u>, <u>Starker v. United States</u>, 602 F.2d 1341, 1344 (9th Cir. 1979) (citing to the draft Restatement of Judgments). In any event, the draft Restatement of Restitution accords with the current Restatement: "[a] person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed or set aside . . . ." Restatement (First) § 74.

7

unavailing. Broadcom relies on these cases to argue that parties injured by erroneously issued injunctions have no claim for relief. But in both cases the Supreme Court expressly limited its holding to situations where the disadvantaged party posted no bond. See W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond") (emphasis supplied); Meyers v. Block, 120 U.S. 206, 211 (1887) ("Without a bond for the payment of damages or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs . . . .") (emphasis supplied). Here, the Court finds Qualcomm's payment of royalties sufficiently analogous to the payment of a bond,[4] such that W.R. Grace and Meyers present no barrier to restitution in this case. Indeed, Meyers expressly referred to "other obligation[s] of like effect" as a bond. This should extend to sunset royalty payments.

Accordingly under the law of restitution, Qualcomm is entitled to restitution of the '686 sunset royalties, plus interest.

B.   Law of Contempt

The Court next addresses the issue of whether the '686 sunset royalties should be returned to Qualcomm under the law of civil contempt. As a general matter, a claimant cannot retain fines assessed for civil contempt of an injunction that has subsequently been vacated. In United States v. United Mine Workers of America, the Supreme Court held that "[t]he right to remedial relief falls with an

---

[4] Much like a bond requirement, the sunset provision allowed Qualcomm to avoid an immediate injunction as to the '686 patent. (See Docket No. 1143.)

8

injunction which events prove was erroneously issued . . ." 330 U.S. 258, 295 (U.S. 1947). The reasoning is that "[t]he invalidation of an injunction in such a setting is equivalent to a holding that the plaintiff never had a legally cognizable interest which the defendant was obliged to respect . . . ." Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO 545 F.2d 1336, 1346 (3d Cir. 1976). Qualcomm contends that the royalties are analogous to a civil contempt award. The Court agrees.

Because it "never had a legally cognizable interest" in the underlying revenue stream, Broadcom "was never entitled" to royalties. Moreover, in the event that Qualcomm had continued to infringe and refused to pay royalties, in violation of the '686 injunction, Broadcom would be required to repay any fines assessed against Qualcomm for civil contempt. In that case, Qualcomm would be reimbursed for its payments, and Broadcom would not be allowed to profit from an incorrect legal position. The parties should be in no different position here. Qualcomm paid royalties to Broadcom in compliance with a civil order. Qualcomm should not be penalized for complying with the '686 injunction. To hold otherwise would give the infringer a perverse incentive to flout sunset provisions in the hope of prevailing on appeal and reclaiming contempt awards.

Similarly, the Court holds that Broadcom should not benefit from prevailing on an incorrect legal position. Indeed, the Ninth Circuit has cited the United Mine Workers doctrine as "recogniz[ing] that a private party should not profit as a result of an order to which a court determines, in retrospect, he was never entitled." Hampton Tree Farms, Inc. v. Yeutter, 956 F.2d 869, 871 (9th Cir. 1992) (citing Latrobe, 545 F.2d at 1346). This reasoning applies with equal force to the present case. Because Broadcom was never entitled to royalties on the invalid '686 patent, the Court should return these payments to Qualcomm.

9

Therefore, the law of contempt favors the return of the '686 sunset royalties.

C. <u>Law of Implied Patent Licenses</u>

With this background the Court turns to the question of whether the licensee of an invalid patent is entitled to royalties paid during the pendency of litigation on that patent. It appears this issue has never been squarely addressed in the case law, although related decisions suggest that a licensee may recoup royalties if paid as part of an ongoing patent dispute.

Broadcom asserts that Qualcomm had an implied license for the '686 patent during the life of the injunction. The Court agrees. Under the sunset provision, Qualcomm could delay the full exclusionary effect of the injunction by paying royalties. Qualcomm effectively purchased a license when it made the decision to pay royalties. <u>See</u> <u>Union Tool Co. v. Wilson</u>, 259 U.S. 107, 113 (1922) ("A patentee, in demanding and receiving full compensation for the wrongful use of his invention in devices made and sold by a manufacturer adopts the sales as though made by himself, and therefore necessarily licenses the use of the devices . . . ."). The implied license allowed Qualcomm to sell and support products relying on the '686 patent through the date of the circuit decision. <u>Compare</u> <u>King Instrument Corp. v. Otari Corp.</u>, 814 F.2d 1560, 1564 (Fed. Cir. 1987) ("That license extends throughout the useful life of those machines and permits the licensee to provide its customers with spare parts needed for repairs."), <u>with</u> (Docket No. 1143 (allowing Qualcomm to support products "for which Qualcomm is obligated to and makes a timely royalty payments in accordance with the sunset provisions").)

Broadcom further contends that a licensee cannot recover previously paid royalties if the licensed patent is later declared invalid. According to Broadcom,

10

there is no reason to treat sunset royalties any differently. The Court disagrees. None of Broadcom's cited cases arises in the context of disputed payments made during litigation. In fact, the case law weighs against Broadcom on this issue. Given the unique circumstances in this case, the logic of the patent case law supports the return of royalties paid during an ongoing patent dispute.

Broadcom cites to the Federal Circuit's unpublished opinion in Geffner v. Linear Rotary Bearings, Inc., 1997 WL 577506, at *6 (Fed. Cir. 1997), for "[t]he general rule . . . that in the absence of fraud a licensee may not recover royalties previously paid even if the patent is subsequently declared invalid." At first blush, the general rule appears to disfavor Qualcomm. But the general rule does not apply in this case. Geffner cites two cases for the rule. The first is Troxel Manufacturing Co. v. Schwinn Bicycle Co., 465 F.2d 1253, 1257 (6th Cir. 1972) ("Troxel I"), rejecting "[a] rule that licensees can recover all royalties paid on a patent which later is held to be invalid . . . ." See also Troxel Manufacturing Co. v. Schwinn Bicycle Co., 489 F.2d 968 (6th Cir.1973), cert. denied, 416 U.S. 939 (1974) ("Troxel II"). Broadcom also relies on Troxel I, but this reliance is misplaced. As the Federal Circuit had previously clarified in Cordis Corp. v. Medtronic, Inc.,

> [n]either the Troxel I nor Troxel II decisions by the Sixth Circuit prohibit the licensee from recouping royalties paid pendente lite once the patent subject to the license agreement is proved invalid. The Troxel decisions only prohibit the licensee from recovering and retaining royalties paid or due prior to the adjudication of invalidity when the challenge to the patent was made by a third party.

780 F.2d 991, 996 (Fed. Cir. 1985), cert. denied, 476 U.S. 1115 (1986). In this

case, royalties were not "paid or due prior to the adjudication of invalidity," but in fact were paid "pendente lite" – during litigation as to the validity of the '686 patent. Troxel I is also distinguishable because the patent at issue was challenged by a third party, rather than the licensee. Here, Qualcomm was directly involved in the litigation, and consistently maintained that the '686 patent was invalid. Based on both the timing of payments and the parties to litigation, Troxel I cannot control. Neither can Geffner's second cited case, Transitron Electronic Corp. v. Hughes Aircraft Co., 649 F.2d 871 (1st Cir. 1981). As in Troxel I, the disputed royalties in Transitron were paid before litigation, and hence these precedents are all inapposite.

Moreover, the reasoning behind the general rule, as articulated by the Sixth Circuit in Troxel I, is not implicated here. Troxel I adopted the general rule to prevent licensees from enjoying the protection of a patent during its term while harboring the secret intent of later suing to recover all royalties paid. 465 F.2d at 1257. Such gamesmanship would not stimulate the early adjudication of invalidity, as endorsed by the Supreme Court in Lear, Inc. v. Adkins, 395 U.S. 653, 673 (1969). The general rule was necessary, the circuit reasoned, as a check against gamesmanship. 465 F.2d at 1257. The First Circuit neatly summarized the rationale as "emphasizing the equities between licensor and licensee, and the policies favoring early adjudication of patent validity and encouragement of the use of the patent system by protecting the security of royalty income." Transitron, 649 F.2d at 874. Based on this rationale, the Court finds no reason to prevent Qualcomm's recovery of royalties. If anything, the balance of interests recommends it: the equities between Broadcom and Qualcomm favor Qualcomm, as set forth above; and returning royalties does no violence to the early adjudication of patents and use of the patent system. Well before the patent was invalidated, and before any royalties were paid, Qualcomm disputed the validity of

the '686 patent.  Qualcomm only paid royalties as a consequence of an erroneously issued injunction.

Broadcom's reading of Cordis is also unavailing.  The holding in Cordis was that, pending the outcome of a challenge to the underlying patent, a court may not issue a preliminary injunction to prevent the termination of a license agreement.  780 F.2d 991.  Cordis thus has limited applicability here, as the Federal Circuit expressly stated that it "need not . . . decide [the question of] which party is entitled to royalties paid or accrued pendente lite."  Id. at 996; see also Nebraska Engineering Corp. v. Shivvers, 557 F.2d 1257, 1260 (8th Cir. 1977) ("We . . . need not, therefore, decide at this stage of the case whether the licensor or licensee will be entitled to royalties paid during the pendency of the litigation.").  The Cordis court did note, however, that it found no law generally prohibiting a licensee from recouping royalties paid pendente lite.  780 F.2d at 996.  In the absence of a patent law barrier, Qualcomm presumably could recover under restitution law, contempt law, or both.  In fact, the Court reads this passage from Cordis to hold that a patent licensee may recover royalties paid under a licensing agreement pending litigation over the validity of the underlying patent.

Cordis includes a lengthy quotation from the Second Circuit's decision in Warner-Jenkinson Co. v. Allied Chemical Corp., 567 F.2d 184 (2d Cir. 1977).  See Cordis, 780 F.2d at 995 (quoting Warner-Jenkinson, 567 F.2d at 188).  In relevant part, the Second Circuit in Warner-Jenkinson noted:

> We believe that if the plaintiffs wish to continue to invoke the protections of their licensing agreements, they should be required to continue paying their royalties to the defendant.  Ultimately, all royalties paid after the filing of the complaint may have to be returned

13

> to the plaintiffs. <u>Once the plaintiffs have proved patent invalidity, they would become entitled to withhold future royalties and to receive restitution of royalties paid pendente lite (with interest)</u>.

567 F.2d at 188 (emphasis supplied). This understanding has been treated favorably in the Seventh, Eighth, and Federal Circuits. See <u>Cordis</u>, 780 F.2d at 995; <u>Precision Shooting Equipment Co. v. Allen</u>, 646 F.2d 313, 321 (7th Cir. 1981) (stating that <u>Warner-Jenkinson</u> "noted that all royalties paid after the complaint was filed would be subject to restitution in the event of invalidity"); <u>Shivvers</u>, 557 F.2d at 1260 (quoting <u>Warner-Jenkinson</u>, 567 F.2d at 188). It thus weighs heavily in favor of Qualcomm here.

Finally, Broadcom contends that post-<u>eBay</u> courts have a strong interest in creating incentives for patentees to propose or freely accept sunset provisions to offset harm to patent infringers and the public.[5] According to Broadcom, patentees will have less incentive to agree to sunset provisions if enjoined parties are free to recover sunset payments should the injunction be overturned on appeal. But this misconceives the process: the sunset provision arises out of the Court's order, and is in no sense dependent on the patentee's consent. Moreover, the infringer is certainly likely to propose a sunset provision in the wake of <u>eBay</u>.

The concept of a sunset provision arises out of the very public interest concerns which the Supreme Court stressed in <u>eBay Inc. v. MercExchange, L.L.C.</u>,

---

[5] <u>eBay</u> set out a four-factor test for permanent injunctive relief in the context of patent disputes: (1) irreparable injury; (2) inadequacy of remedies at law; (3) balance of hardships favoring party seeking injunction; and (4) public interest. <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391-92 (2006).

14

547 U.S. 388, 391-92 (2006), and this Court underscored in its injunction order (Docket No. 996, pp. 8-9, 17-18). Without a sunset period to develop design-around devices, technology would be immediately pulled from the market – leading to disruption and greater inconvenience.

Therefore, Qualcomm can recover the '686 sunset royalties even under a theory of an implied patent license agreement. This case is easily distinguishable from Broadcom's cited cases – Qualcomm, rather than a third party, litigated patent validity; Qualcomm paid royalties during, rather than before, litigation; payments occurred as a consequence of a court order, rather than being freely negotiated in the marketplace; and public policy favors Qualcomm, rather than Broadcom. Qualcomm should be made whole under the law of restitution, the law of contempt, as well as the law of implied patent licenses.

In sum, the implied licensee doctrine works well to avoid gamesmanship and to allow the would-be infringer in a free market to assess and react to the risks of infringement liability. Its logic ebbs where the payments flow from Court intervention, whether or not the Court has literally compelled the payment of the sunset royalties. Said another way, the patent laws should not allow private parties to reverse a contractual decision mistaken in hindsight, but the patent laws also should not allow an ultimately losing patentee to benefit from a mistaken decision of the Court.

III.   Conclusion

For the foregoing reasons, the Court GRANTS the motion. Within fifteen days, Broadcom shall repay Qualcomm the '686 sunset royalties, plus interest at the rate on federal judgments as of December 31, 2007. See 28 U.S.C. § 1961.

DATED:  October 29, 2008

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE