MARTHA K. GOODING (SBN 101638)
goodingm@howrey.com
HOWREY LLP
4 Park Plaza
Suite 1700
Irvine, CA  92614
Telephone:  (949) 759-3935
Facsimile:   (949) 721-6910

EVAN R. CHESLER (*pro hac vice*)
echesler@cravath.com
KEITH R. HUMMEL (*pro hac vice*)
khummel@cravath.com
RICHARD J. STARK (*pro hac vice*)
rstark@cravath.com
TEENA-ANN V. SANKOORIKAL (*pro hac vice*)
tsankoorikal@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile:  (212) 474-3700

Attorneys for Defendant and Counterclaimant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br>QUALCOMM INCORPORATED,<br><br>       Defendant.<br><br>AND RELATED CROSS ACTION. | CASE NO.  SACV05-0467-JVS (RNBx)<br><br>**QUALCOMM'S OPPOSITION TO BROADCOM'S MOTION TO DISMISS, STRIKE OR FOR SUMMARY JUDGMENT**<br><br>Courtroom:  10C<br>Judge:     Hon. James V. Selna<br>Date:      February 2, 2009<br>Time:     1:30 p.m. |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ii

I.     INTRODUCTION ................................................................................... 1

II.    RELEVANT BACKGROUND........................................................... 4

       A.   Qualcomm's Inequitable Conduct Defense and Counterclaim.................. 4

       B.   Qualcomm's Equitable Estoppel/Waiver and Unclean Hands Defenses and Counterclaims. ........................................................... 7

III.   APPLICABLE LEGAL STANDARD ............................................. 8

       A.   Standard for Motion to Dismiss or Strike ................................... 8

       B.   Standard for Summary Judgment................................................. 8

IV.    ARGUMENT ......................................................................................... 9

       A.   Qualcomm's Inequitable Conduct Defense and Counterclaim Should Not Be Dismissed. ............................................................. 10

       B.   Qualcomm Equitable Estoppel/Waiver and Unclean Hands Defenses and Counterclaims Should Not Be Dismissed. ................ 17

V.     CONCLUSION .................................................................................. 22

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ...................................................................... 9

5

Baxter Int'l v. McGaw, Inc.,
149 F.3d 1321 (Fed. Cir. 1998) ................................................... 12

6

7

Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,
106 F. Supp. 2d 667 (D.N.J. 2000) .............................................. 16

8

Bristol-Myers Squibb, Inc. v. Rhone-Poulenc, Inc.,
48 U.S.P.Q. 2d 1817 (S.D.N.Y. 1998) ......................................... 11

9

10

Cardenas v. Anzai,
311 F.3d 929 (9th Cir. 2002) ........................................................ 21

11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ....................................................................... 9

12

13

Digital Control, Inc. v. Charles Mach. Works,
437 F.3d 1309 (Fed. Cir. 2006) .................................................... 13

14

Environ Prods. v. Total Containment,
43 U.S.P.Q. 2d 1288 (E.D. Pa. 1997) ........................................... 12

15

16

Ferring B.V. v. Barr Labs.,
437 F3d. 1181 (Fed. Cir. 2006) .................................................... 12

17

FMC Corp. v. Manitowoc Co. Inc.,
835 F.2d 1411 (Fed. Cir. 1987) .................................................... 12

18

19

Freeman v. Arpaio,
125 F.3d 732 (9th Cir. 1997) .......................................................... 8

20

Gibson v. County of Washoe, Nev.,
290 F.3d 1175 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003) ..................... 9

21

22

In re McKesson HBOC, Inc. Sec. Litig.,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) .......................................... 8

23

Juicy Whip, Inc. v. Orange Bang, Inc.,
292 F.3d 728 (Fed. Cir. 2002) ..................................................... 11

24

25

KangaROOS, USA v. Caldor, Inc.,
778 F.2d 1571 (Fed. Cir. 1985) .................................................... 11

26

Kansas Jack, Inc. v. Kuhn,
719 F.2d 1144 (Fed. Cir. 1983) .................................................... 12

27

28

Page(s)

Keystone Driller Co. v. Gen. Excavator Co.,
290 U.S. 240 (1933) ......................................................................... 18

M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,
439 F.3d 1335 (Fed. Cir. 2006) ....................................................... 12

Molins PLC v. Textron, Inc.,
48 F.3d 1172 (Fed. Cir. 1995) ......................................................... 16

Navarro v. Block,
250 F.3d 729 (9th Cir. 2001) ............................................................. 8

Nissan Fire & Marine Ins. Co. Ltd., v. Fritz Cos.,
210 F.3d 1099 (9th Cir. 2000) ........................................................... 9

Playboy Enters., Inc. v. Welles,
279 F.3d 796 (9th Cir. 2002) ............................................................. 9

Principal Life Ins. Co. v. Robinson,
394 F.3d 665 (9th Cir. 2005) ........................................................... 21

Scripps Clinic & Research Foundation v. Genentech, Inc.,
927 F.2d 1565 (Fed. Cir. 1991) ....................................................... 16

Shakur v. Schriro,
514 F.3d 878 (9th Cir. 2008) ............................................................. 8

Shwarz v. United States,
234 F.3d 428 (9th Cir. 2000) ............................................................. 8

SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,
88 F.3d 780 (9th Cir. 1996) ............................................................... 8

Star Fruits S.N.C. v. United States,
280 F. Supp. 2d 512 (E.D. Va. 2003) ............................................... 11

Star Fruits S.N.C. v. United States,
393 F.3d 1277 (Fed. Cir. 2005) ................................................... 10, 17

Van Buskirk v. Cable News Network, Inc.,
284 F.3d 977 (9th Cir. 2002) ............................................................. 8

Vanderlande Indus. Nederland BV v. I.T.C.,
366 F.3d 1311 (Fed. Cir. 2004) ....................................................... 17

Zell v. Intercapital Income Sec., Inc.,
675 F.2d 1041 (9th Cir. 1982) ................................................. 9, 17, 18

Page(s)

**Statutes & Rules**

Fed. R. Civ. P. 9 ................................................................................................ 12

Fed. R. Civ. P. 12 .......................................................................................... 8, 17

Fed. R. Civ. P. 56 ........................................................................................... 1,8

37 C.F.R. § 1.56 ........................................................................................ 10, 17

37 C.F.R. § 1.105 ............................................................................................ 10

37 C.F.R. § 1.555 .................................................................................. 10, 12, 13

## I.     INTRODUCTION

Broadcom's motion—styled in the alternative as one to dismiss, to strike or for summary judgment—should be denied in all respects.  Most fundamentally, the motion fails because Broadcom does not seriously contest that Qualcomm has adequately pleaded the elements of its defenses and counterclaims.  The Court thus faces a premature motion for summary judgment that purports to challenge the sufficiency of Qualcomm's evidence before Qualcomm has had a chance to take discovery on these claims and defenses.  Even if the Court were to entertain a motion for summary judgment where key evidence—documentary and testimonial evidence concerning the recently concluded reexamination and Broadcom's refusal to license the '051 Patent—remains to be gathered,[1] Broadcom's motion still fails as a matter of fact and law.

As to Qualcomm's inequitable conduct defense, Broadcom completely ignores the theory actually pleaded in Qualcomm's Amended Answer and Counterclaim.  Contrary to Broadcom's arguments, Qualcomm does <u>not</u> allege that Broadcom withheld from the PTO three invalidating Japanese prior art references (collectively, the "Japanese references").  (<u>Cf., e.g.</u>, BC Br.[2] at 1, 6-7.)  Rather, Qualcomm actually alleges that Broadcom breached the duty of candor it owed the PTO by failing to explain the significance of the Japanese references, even after Broadcom was asked to do so by the Examiner.  More specifically, Qualcomm alleges, based on the evidence currently available to it, that Broadcom failed to bring the Japanese references (and their invalidating nature) to the Examiner's

---

[1] The accompanying Fed. R. Civ. P. 56(f) Declaration of Teena-Ann V. Sankoorikal ("Sankoorikal Decl.") details certain evidence that counsel believes Qualcomm will be able to develop during discovery.  Qualcomm respectfully requests that the Court deny Broadcom's motion for summary judgment as premature under Rule 56(f).

[2] Broadcom's Memorandum in Support of the Motion to Dismiss, Strike or for Summary Judgment is referred to herein as "BC Br.".

1   attention after the Examiner—clearly overwhelmed by the "unusually large

2   number" of materials Broadcom had submitted—specifically instructed Broadcom

3   to "point[] out" "any information that might be of particular relevance".  (Am.

4   Answer ¶ 91; Declaration of Radu A. Lelutiu ("Lelutiu Decl.") Ex. 1, Notice of

5   Intent to Issue an <u>Ex</u> <u>Parte</u> Reexamination Certificate, at 12.)  Broadcom remained

6   silent even after the invalidating nature of two of the Japanese references was

7   specifically brought to its attention by Qualcomm before this Court on September

8   29, 2008, well before the reexamination certificate issued on December 10, 2008.

9   (<u>See, e.g.</u>, Lelutiu Decl. Ex. 2, Sept. 29, 2008 Tr. at 29:21-35:10.)  Because

10  Broadcom knew that the Japanese references were highly material to the

11  patentability of the pending claims, Broadcom's deliberate silence, which

12  ultimately caused the PTO to reissue certain claims of the '051 Patent (Lelutiu

13  Decl. Ex. 3, Certificate of Reexamination), is inequitable conduct.

14          Subsequent PTO action makes clear that the defense Qualcomm has

15  pleaded—as opposed to the straw man theory that Broadcom attacks in its

16  motion—is fully supported by fact and law.  Specifically, just hours before

17  Broadcom filed its motion to dismiss, the PTO ordered a <u>new</u> reexamination of

18  each of the asserted claims of the '051 Patent (the "New Reexamination Order").

19  The New Reexamination Order, which Broadcom completely ignores in its moving

20  papers, expressly finds that substantial new questions of patentability were raised

21  by the Japanese references and that those questions, contrary to Broadcom's

22  cavalier arguments here, had <u>not</u> been addressed in the reexamination because they

23  were "<u>distinct</u> from the [substantial new questions of patentability] previously

24  raised".  (Lelutiu Decl. Ex. 4, New Reexamination Order, at 67, 68, 70 (emphasis

25  added).)  The New Reexamination Order thus makes clear that the Examiner was

26  <u>not</u> fully familiar with the Japanese references when he allowed the '051 Patent to

27  reemerge from reexamination.  It also confirms that the Japanese references were

28

1   highly material to the reexamination, a fact of which Broadcom was well aware

2   when it ignored the Examiner's request.

3          Broadcom's attacks on Qualcomm's equitable estoppel/waiver and

4   unclean hands claims and defenses are similarly misguided.  Here too, Broadcom

5   does not contest that Qualcomm adequately pleaded the applicable elements.

6   Instead, Broadcom erroneously argues that Qualcomm's claims and defenses

7   "lack[] any support".  (BC Br. at 2.)  In fact, even in the face of Broadcom's failure

8   to provide discovery on the subject (see Sankoorikal Decl. ¶ 5), Qualcomm's claims

9   and defenses are well-supported.  Broadcom also falsely claims that "Qualcomm

10  makes no allegation that Broadcom has refused to license any third parties".  (BC

11  Br. at 2.)  In fact, Qualcomm alleges that "Qualcomm has been harmed and its

12  business disrupted by Broadcom's failure to offer FRAND licenses for the '051

13  patent to Qualcomm and/or to [its] direct and indirect customers".  (Am. Answer. ¶

14  102 (emphasis added).)

15         Since fact discovery is not yet complete, Broadcom should not be

16  permitted to challenge the evidentiary support of Qualcomm's defenses and

17  counterclaims, particularly because Broadcom is withholding relevant documents in

18  its possession, custody and control (Sankoorikal Decl. ¶ 5), and there are

19  outstanding requests for third party discovery that Qualcomm believes will uncover

20  evidence of Broadcom's refusal to license the '051 Patent to Qualcomm's direct

21  and/or indirect customers (id. ¶  8).

22         Even on the present record, Broadcom is not entitled to summary

23  judgment.  Broadcom has conceded that it has thus far failed to comply with its

24  obligation to license Qualcomm (BC Br. at 3 (arguing that Broadcom "will [some

25  day] comply fully with its FRAND licensing commitment")), and there is no

26  evidence in the record that would allow the Court to conclude that Broadcom has

27  never refused a licensing request received from a third party.  Because Broadcom's

28

QUALCOMM'S OPPOSITION TO BROADCOM'S          - 3 -          CASE NO. SACV05-0467-JVS (RNBx)
MOTION TO DISMISS, STRIKE OR FOR SUMMARY
JUDGMENT

1   other arguments find no support in the law, the Court should refuse to dismiss

2   Qualcomm's equitable estoppel/waiver and unclean hands defenses.

3          Broadcom's motion should be denied because Qualcomm has

4   adequately pleaded its claims and defenses, summary judgment is premature, and

5   even without full discovery the record evidence reveals that Broadcom is not

6   entitled to summary judgment.

7   **II.    RELEVANT BACKGROUND**

8          Because Broadcom has mischaracterized Qualcomm's pleadings and

9   ignored critical evidence, Qualcomm briefly summarizes the aspects of its defenses

10  and counterclaims that are relevant here.

11         **A.    Qualcomm's Inequitable Conduct Defense and Counterclaim.**

12         After commencing this litigation in 2005, Broadcom asserted certain

13  claims of the '051 Patent against Qualcomm.  (Am. Answer. ¶ 44.)  In 2006, the

14  PTO granted Qualcomm's reexamination petitions regarding the '051 Patent,

15  including the asserted claims.  (Id. ¶¶ 41-42.)  In December 2006, this Court

16  granted Qualcomm's motion to stay litigation as to the '051 Patent pending the

17  conclusion of the PTO's reexamination proceeding.  (D.I. 254.)

18         On December 7, 2007, the PTO rejected all the claims of the '051

19  Patent that Broadcom had been asserting against Qualcomm.  (Am. Answer ¶ 84.)

20  On February 5, 2008, Broadcom filed a response to the Office Action, arguing,

21  among other things, that original claims 24 and 26-28 of the '051 Patent and several

22  new proposed claims that depended from claim 24—provisionally numbered as

23  claims 44-72—were patentable over a prior art reference (the "Goodman

24  Reference") the PTO had relied upon in its Office Action.  Broadcom specifically

25  argued that the Goodman Reference did not disclose a particular limitation of claim

26  24 and its dependent claims (the "Type Selection Limitation").  (Id. ¶¶ 85-86, 46.)

27         Also on February 5, 2008, Broadcom submitted to the PTO two

28  Information Disclosure Statements ("IDS"), which collectively listed 116

documents and, in total, comprised about 9,000 pages—the equivalent of three bankers' boxes of documents.  (Id. ¶¶ 64-65.)  Included among the numerous items appended to the IDSs were the three Japanese references, each of which discloses communications systems and/or devices that effectuate changes between what Broadcom had previously indicated were different "types" of source encoding.  (Am. Answer. ¶¶ 51; 54; 56-57; 59-61; ¶ 69 (discussing JP '432, which discloses the use of 16QAM and 4PSK); ¶ 73 (discussing JP '848, which discloses the use of MQAM and 4PSK); ¶ 78 (discussing JP '251, which discloses the use of 16QAM, QPSK and GMSK).)  Notably, however, Broadcom provided no detail to the PTO about or discussion of the Japanese references, apart from noting that all the references in the IDSs had "been either cited, produced or relied upon by Qualcomm" in the parallel litigation.  (Id. ¶ 65.)

On August 28, 2008, during a telephone conference with the PTO, Broadcom cancelled all claims under reexamination, with the exception of claims 24, 26-28 and new dependent claims 44-72, thereby rendering much of the prior art appended to the February 2008 IDSs irrelevant.  (Lelutiu Decl. Ex. 1, Notice of Intent to Issue an Ex Parte Reexamination Certificate, at 11; Lelutiu Decl. ¶ 16.)  Broadcom never informed the Examiner that much of the art Broadcom had submitted to the PTO had been rendered irrelevant.

On August 29, 2008, the PTO issued a Notice of Intent to Issue an Ex Parte Reexamination Certificate ("NIRC") for the '051 Patent.  (Am. Answer ¶ 88.)  In the NIRC, the Examiner explained that because none of the prior art references he had considered disclosed a communication system that met the Type Selection Limitation alleged to be contained in the claims at issue, he deemed original claims 24 and 26-28 and new dependent claims 44-72 patentable over those references.  (Id. ¶ 89.)  Notably, the Examiner observed that where, as in the matter before him, "the IDS citations are submitted but not described, the Examiner is only responsible for cursorily reviewing the references", and, that "due to the unusually large

1   number of references cited, and the absence of any description of the relevance of

2   the references, it should be assumed that only the most cursory review of the cited

3   documents consistent with these guidelines has been performed". (Id. ¶ 91; Lelutiu

4   Decl. Ex. 1, Notice of Intent to Issue an Ex Parte Reexamination Certificate, at 12.)

5   The Examiner then stated that if Broadcom "is aware of any information that might

6   be of particular relevance, it should be pointed out in order to insure a higher degree

7   [of] consideration". (Am. Answer ¶ 91; Lelutiu Decl. Ex. 1, Notice of Intent to

8   Issue an Ex Parte Reexamination Certificate, at 12.)

9           On September 2, 2008, rather than respond to the PTO's specific

10  request that it "point out" for the Examiner's benefit "any information that might be

11  of particular relevance", Broadcom moved this Court to lift the litigation stay and

12  revive its infringement claims against Qualcomm as to the '051 Patent. (D.I. 1315.)

13  During the September 29, 2008 oral argument on that motion, Qualcomm showed

14  how two of the Japanese references invalidate Claim 24 of the '051 Patent. (Lelutiu

15  Decl. Ex. 2, Sept. 29, 2008 Tr. at 29:21-35:10.) Thus, even if Broadcom had been

16  unaware of the high degree of materiality of the Japanese references (an issue that

17  Qualcomm is exploring in discovery), it is indisputable that Broadcom became

18  aware of the significance of those references on September 29, 2008. Yet,

19  Broadcom chose to continue to ignore the Examiner's directive to point out

20  references and information of particular relevance.

21          On December 10, 2008, having not received any response from

22  Broadcom, the PTO issued a Certificate of Reexamination for the '051 Patent.

23  (Lelutiu Decl. Ex. 3, Certificate of Reexamination.)

24          On December 9, 2008, the PTO granted Qualcomm's September 12,

25  2008 request for a New Reexamination Order on the basis that the Japanese

26  references raised substantial new questions of patentability that were distinct from

27

28

1   all other questions that had been disposed of in the prior reexamination.  (Lelutiu

2   Decl. Ex. 4, New Reexamination Order.)[3]

3          **B.     Qualcomm's Equitable Estoppel/Waiver and Unclean Hands**

4                  **Defenses and Counterclaims.**

5                  As a member of the European Telecommunications Standards Institute

6   ("ETSI"), Broadcom is required to comply with ETSI's Intellectual Property Rights

7   Policy ("IPR Policy").  The IPR Policy requires the owner of any IPR that is

8   actually "essential" to an ETSI-promulgated standard to undertake to negotiate in

9   good faith licenses to that IPR on fair, reasonable and nondiscriminatory, or

10  "FRAND", terms.  (Am. Answer ¶ 98.)  In May 2005, Broadcom declared the '051

11  Patent to ETSI, triggering Broadcom's obligation to undertake to negotiate in good

12  faith to license the '051 Patent on FRAND terms.  (Id. ¶ 99.)

13                 Qualcomm alleges that Broadcom has "refused to offer licenses" to the

14  '051 Patent.   (Id. ¶ 101.)  Broadcom admits that it has rebuffed Qualcomm's

15  request for a license (see BC Br. at 3), and there is no evidence in the record that

16  Broadcom has honored any third-party request for a license to the '051 Patent.

17  Qualcomm believes that discovery will reveal that Broadcom has refused requests

18  for licenses to the '051 Patent.  Indeed, Broadcom has very recently indicated that it

19  does not have a business interest in licensing "the Santa Ana patents", including the

20  '051 Patent.  (Lelutiu Decl. Ex. 5, October 21, 2008 Earnings Conference Call

21  Transcript, at 92-93.)  Qualcomm alleges that it "has been harmed and its business

22  disrupted by Broadcom's failure to offer FRAND licenses for the '051 patent to

23  Qualcomm and/or to [its] direct and indirect customers".  (Am. Answer ¶ 102.)

24

25  ───────────────────

26          [3] Pursuant to PTO practice, where a new request for reexamination is filed
    after the issuance of a NIRC, the PTO generally allows the reexamination
27  certificate to issue without regard to the new reexamination.  MPEP § 2295.  "The
    second request [i.e., the new reexamination request] is then considered based upon
28  the claims in the patent as indicated in the issued reexamination certificate".  Id.

III.   **APPLICABLE LEGAL STANDARD**

   A.   **Standard for Motion to Dismiss or Strike**

Motions to dismiss or strike pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(f) test the legal sufficiency of a claim.  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  The focus of such motions is the legal sufficiency of the challenged pleading, rather than the substantive merits of a claim, and thus courts ordinarily limit their review to the face of the pleading.  <u>See</u> <u>Van Buskirk v. Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002).

In considering a motion on the pleadings, a court must accept all material allegations giving rise to the claim as true and construe them in the light most favorable to the claimant.  <u>See</u> <u>Shwarz v. United States</u>, 234 F.3d 428, 435 (9th Cir. 2000).  Dismissal is proper only when the claimant has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory.  <u>SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.</u>, 88 F.3d 780, 782-83 (9th Cir. 1996).

Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief".  Accordingly, motions to dismiss for failure to state a claim are disfavored; complaints are construed liberally to set forth some basis for relief, as long as they provide basic notice to the defendants of the charges against them.  <u>In re McKesson HBOC, Inc. Sec. Litig.</u>, 126 F. Supp. 2d 1248, 1257 (N.D. Cal. 2000).

   B.   **Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(c).  A fact is material when, under the substantive governing law, it affects the outcome of the case.  <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997), <u>abrogated on other grounds</u>, <u>Shakur v. Schriro</u>, 514 F.3d

878, 884-85 (9th Cir. 2008).  A "genuine issue" of material fact, which precludes summary judgment, arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party".  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, <u>after suitable discovery</u>, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial".  <u>Nissan Fire & Marine Ins. Co. Ltd., v. Fritz Cos.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000) (emphasis added).

When ruling on a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant.  <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1180 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106 (2003).  The court may not engage in credibility determinations or weighing of the evidence; these are functions for the jury.  <u>Playboy Enters., Inc. v. Welles</u>, 279 F.3d 796, 800 (9th Cir. 2002).  As a general matter, a summary judgment motion is premature until, among other things, all discovery is complete.  <u>Zell v. Intercapital Income Sec., Inc.</u>, 675 F.2d 1041, 1049-50 (9th Cir. 1982) (reversing a district court's grant of summary judgment where discovery requests of the party opposing summary judgment remained unanswered and there was nothing in the record that precluded the possibility that relevant evidence might be discovered).

## IV.   ARGUMENT

Broadcom's motion should be denied because Broadcom's arguments are either irrelevant—as they simply have nothing to do with the theories actually

1   articulated by Qualcomm—or else are legally deficient.  In addition, to the extent

2   that Broadcom is challenging the sufficiency of the evidence Qualcomm could

3   adduce to support its defenses and claims, the motion should be denied because

4   discovery is not yet complete and Qualcomm expects to develop an evidentiary

5   record that fully supports those defenses and claims.  (See Sankoorikal Decl. ¶¶ 5,

6   7-9.)  Even on the present record, Broadcom is not entitled to summary judgment as

7   a matter of law.

8           **A.     Qualcomm's Inequitable Conduct Defense and Counterclaim**

9                   **Should Not Be Dismissed.**

10          Section 1.555(a) of the Code of Federal Regulations provides that,

11  during a reexamination, patent holders and their agents owe the PTO duties of

12  candor and good faith.  37 C.F.R. § 1.555(a).  The duty of candor "includes a duty

13  to disclose to the Office all information known . . . to be material to patentability".

14  Id.  However, "the duties of candor, good faith, and disclosure [are] not complied

15  with if any fraud on the Office [i]s practiced or attempted or the duty of disclosure

16  [i]s violated through bad faith or intentional misconduct".  Id.

17          Subsumed within the patent holder's duties of candor and good faith is

18  the obligation to be open and honest with the Examiner and to respond candidly to

19  requests for information and questions posed by the Examiner.  37 C.F.R. § 1.105;

20  Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1283 (Fed. Cir. 2005) ("The

21  duty of candor embodied in 37 C.F.R. § 1.56 does not give the applicant the power

22  to refuse a Requirement For Information under section 1.105.") (footnote omitted).

23  The patent holder's obligation to deal candidly with the PTO is all the more

24  important, where, as here, assistance is expressly requested by a PTO Examiner.

25  Indeed, the type of information that a patent holder is duty bound to supply to the

26  Examiner following a request for information pursuant to 37 C.F.R. § 1.105

27  includes not only information that is material to patentability in itself, but also

28  information that "may be reasonably necessary to properly examine or treat the

1   matter". <u>Star Fruits S.N.C. v. United States</u>, 280 F. Supp. 2d 512, 515-16 (E.D. Va.
2   2003).

3   To facilitate the Examiner's evaluation of prior art and minimize the
4   potential for error, the Manual of Patent Examining Procedure directs applicants to
5   "[e]liminate clearly irrelevant and marginally pertinent cumulative information. If
6   a long list is submitted, [the Manual directs applicants to] highlight those
7   documents which have been <u>specifically brought to applicant's attention and/or are</u>
8   <u>known to be of most significance</u>." MPEP § 2004(13) (emphasis added).

9   A lapse on the part of the PTO is no excuse and "no reprieve from the
10  duty of square dealing". <u>KangaROOS, USA v. Caldor, Inc.</u>, 778 F.2d 1571, 1576
11  (Fed. Cir. 1985). Patent holders may not take advantage of the PTO's errors. <u>Id.</u>
12  Indeed, where appropriate, patent holders must correct an Examiner's
13  misunderstanding of the facts or the record. <u>Juicy Whip, Inc. v. Orange Bang, Inc.</u>,
14  292 F.3d 728, 744 (Fed. Cir. 2002) (stating that an applicant's failure to correct the
15  examiner's erroneous interpretation of an affidavit may be the predicate for an
16  inequitable conduct claim, but ultimately concluding that the applicant's conduct
17  was not material).

18  The duties of candor and good faith are critical to the successful
19  functioning of the patent system, particularly because patent prosecution and
20  reexamination proceedings are <u>ex parte</u> and the PTO has limited resources. <u>See,</u>
21  <u>e.g.,</u> <u>Bristol-Myers Squibb, Inc. v. Rhone-Poulenc, Inc.</u>, 48 U.S.P.Q. 2d 1817, 1820
22  (S.D.N.Y. 1998). Indeed, because the PTO is flooded with patent applications,
23  PTO examiners typically spend fewer than 20 hours working on each patent
24  application.[4] Thus, "[t]he public interest is best served, and the most effective

26  [4] <u>See</u> Doug Lichtman & Mark Lemley, <u>Rethinking Patent Law's Presumption</u>
27  <u>of Validity</u>, 60 Stan. L. Rev. 45, 53 (2007) ("[E]xaminers are asked to do all of this
    in . . . an average of between sixteen and seventeen hours" (citing John R. Thomas,
28  <u>Collusion and Collective Action in the Patent System: A Proposal for Patent</u>
    <u>Bounties</u>, 2001 U. Ill. L. Rev. 305, 314)).

reexamination occurs when, at the time a reexamination proceeding is being
conducted, the Office is aware of and evaluates the teachings of all information
material to patentability in a reexamination proceeding".  37 C.F.R. § 1.555(a).

An inequitable conduct defense or claim may be premised on a breach
of the duties of candor and good faith—including, <u>inter</u> <u>alia</u>, through a patent
applicant's failure to disclose material information or the failure to respond to
requests for information—coupled with an intent to deceive.  <u>See, e.g.</u>, <u>Baxter Int'l</u>
<u>v. McGaw, Inc.</u>, 149 F.3d 1321, 1327 (Fed. Cir. 1998); <u>Environ Prods. v. Total</u>
<u>Containment</u>, 43 U.S.P.Q. 2d 1288, 1291 (E.D. Pa. 1997); <u>FMC Corp. v.</u>
<u>Manitowoc Co. Inc.</u>, 835 F.2d 1411, 1415 (Fed. Cir. 1987).  And although
inequitable conduct must be pleaded with particularity, intent to deceive the PTO
may be alleged generally.  <u>See</u> Fed. R. Civ. P. 9(b).  That is because intent may be
"generally inferred from the facts and circumstances surrounding the applicant's
overall conduct, especially where there is no good faith explanation for [a particular
act]".  <u>M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.</u>, 439 F.3d 1335,
1341 (Fed. Cir. 2006).  <u>See also</u> <u>Ferring B.V. v. Barr Labs.</u>, 437 F3d. 1181, 1191
(Fed. Cir. 2006); <u>Kansas Jack, Inc. v. Kuhn</u>, 719 F.2d 1144, 1151 (Fed. Cir. 1983)
(noting that intent "may be proven by a showing of acts the natural consequences of
which are presumably intended by the actor").

Here, the facts pleaded by Qualcomm demonstrate the viability of
Qualcomm's inequitable conduct defense and claim:  Broadcom's February 2008
IDSs included an "unusually large number of references cited [<u>i.e.</u>, 9,000 pages, but
no] description of the relevance of the references".  (Lelutiu Decl. Ex. 1, Notice of
Intent to Issue an <u>Ex</u> <u>Parte</u> Reexamination Certificate, at 12.)  Broadcom knew that,
following its cancellation of several claims subject to reexamination, much of the
prior art appended to the IDSs had become irrelevant to the questions that remained
before the PTO.  (Lelutiu Decl. ¶ 16.)  Broadcom knew that the Examiner had
performed "only the most cursory review of the cited documents".  (Lelutiu Decl.

1   Ex. 1, Notice of Intent to Issue an Ex Parte Reexamination Certificate, at 12.)

2   Broadcom was asked, consistent with MPEP § 2004(13), to "point[] out" for the

3   Examiner's benefit "any information that might be of particular relevance". (Id.)

4   Qualcomm believes that discovery will confirm that when Broadcom received the

5   Examiner's request for information, it was aware of the Japanese references and

6   knew that those references disclose systems and/or devices that contain the Type

7   Selection Limitation of the then-pending claims of the '051 Patent. In September

8   2008, Broadcom was reminded about the relevance of two of the Japanese

9   references by Qualcomm's counsel in open court. (Lelutiu Decl. Ex. 2, Sept. 29,

10  2008 Tr. at 29:21-35:10.) Nevertheless, Broadcom never explained the significance

11  of the Japanese references to the PTO, even when specifically asked by the

12  Examiner to do so.

13          Simply put, Broadcom "hid the ball" from the Examiner. And it had a

14  reason to do so—to persuade the PTO to issue the reexamination certificate without

15  correctly considering the Japanese references. That course of conduct amounts to a

16  breach of Broadcom's duties of candor and good faith to the PTO, and also strongly

17  suggests an intent to deceive and mislead the Examiner.

18          There can be no serious dispute that the information at issue is

19  material, as "[i]t refutes, or is inconsistent with, a position the patent owner[, here

20  Broadcom, has taken] in . . . [a]sserting an argument of patentability" or would be

21  considered important by an examiner in determining patentability. 37 C.F.R.

22  § 1.555(b)(2); Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1315-

23  16 (Fed. Cir. 2006). In 2006, Broadcom accused particular Qualcomm chips (based

24  on EV-DO and HSDPA technology) of infringing Claim 24 and the then-existing

25  dependent Claims 26-28 of the '051 Patent based on the alleged ability of those

26  chips to perform at least two types of modulation, QPSK and 16QAM. (Am.

27  Answer. ¶¶ 51-62.) Like the accused Qualcomm devices, each of the three

28  Japanese references discloses a communication system and/or device capable of

performing modulation in accordance with the particular modulation techniques Broadcom identified as infringing in 2006.  Specifically, (i) JP '432 discloses an RF communication system in which, depending on evaluation of communications conditions, modulation maybe switched between various techniques, which expressly include 4PSK (i.e., QPSK) and 16QAM (Lelutiu Decl. Ex. 6, JP '432); (ii) JP '848 discloses an RF communication system in which, depending on evaluation of communication conditions, modulation may be switched between MQAM (such as 16QAM) and 4PSK (i.e., QPSK) (Lelutiu Decl. Ex. 7, JP '848); and (iii) JP '251 discloses a modulator for use in a mobile communication system in which modulation may be switched between 16QAM, QPSK and GMSK (Lelutiu Decl. Ex. 8, JP '251).

In the reexamination, Broadcom specifically overcame the PTO's rejection of Claim 24 and its dependent claims by arguing that the Goodman Reference, the prior art reference the Examiner relied upon to reject those claims, "does not disclose selecting a type of method of modulation".  (Lelutiu Decl. Ex. 9, February 5, 2007 Response to Office Action, at 141.)  Although the Examiner agreed in the NIRC that the "variance in channel speech coding" taught by the Goodman Reference "fails to rise to the teaching of changing the type of source encoding as defined in the instant proceeding above" (Lelutiu Decl. Ex. 1, Notice of Intent to Issue an Ex Parte Reexamination Certificate, at 15 (emphasis in the original)), it is plain that the Examiner had not considered the Japanese references in any meaningful way.  Notably, contrary to his prior practice throughout the reexamination (Lelutiu Decl. Ex. 10, 12/7/07 Office Action; Lelutiu Decl. Ex. 11, 6/30/08 Office Action), in the August 2008 Notice of Intent to Issue Ex Parte Reexamination Certificate, the Examiner did not initial each reference (Lelutiu Decl. Ex. 1, Notice of Intent to Issue Ex Parte Reexamination Certificate, at 17-23).

Having just been persuaded by Broadcom to deem Claim 24 and its dependent claims patentable because the Goodman Reference did not disclose the

Type Selection Limitation of the '051 Patent, there is no question that the Examiner would have found the Japanese references, which disclose that very limitation, highly material.  This is confirmed by the New Reexamination Order, which states, as to each Japanese reference, that because the references

> "describe[] modulation methods that may be considered different 'types' of modulation . . . <u>a reasonable examiner would have found said references germane to an analysis of patentability of the instant claims</u>.  They thus raise a substantial new question of patentability over said claims, which question had not been decided in a previous examination of the Patent, nor considered in holding of invalidity by Federal Court."

(Lelutiu Decl. Ex. 4, New Reexamination Order, at 67, 70 (emphasis added); <u>see id.</u> at 69.)  Broadcom's supposed excuse for its failure to respond —that the relevant "information . . . had already been disclosed to the [PTO] <u>by Qualcomm itself</u>" (BC Br. at 9 (emphasis in the original))—collapses in the face of the New Reexamination Order, which clearly shows that the PTO was <u>not</u> aware that the Japanese references disclosed the Type Selection Limitation.

In sum, Qualcomm has pleaded all of the elements of an inequitable conduct defense and counterclaim, and, indeed, Qualcomm's Amended Answer and Counterclaims go well beyond what was required at the pleading stage.  Broadcom's arguments in support of summary dismissal of that defense and claim, on the other hand, fall wide of the mark.  In fact, Broadcom's principal argument— that Qualcomm "has failed to plead facts sufficient to establish the rare situation of inequitable conduct occurring through 'burying' of prior art references" (BC Br. at 6)—has virtually nothing to do Qualcomm's actual allegations.

None of the cases cited by Broadcom involve a fact pattern analogous to the one before this Court, where a patent holder successfully persuaded the PTO to deem particular claims patentable over prior art on the basis that such art did not teach particular limitations, while at the same time the patent holder failed—despite

1   being expressly requested—to point out to the PTO that other prior art existed

2   containing that very limitation.

3             Moreover, in none of Broadcom's cases did the PTO, after being

4   provided the withheld information, <u>grant a new reexamination</u> on the basis that the

5   information alleged to have been withheld raised substantial new questions of

6   patentability which were not known to the PTO during the original reexamination.

7   Indeed, Broadcom's leading cited case, <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172

8   (Fed. Cir. 1995), actually supports Qualcomm's position.  In <u>Molins</u>, "[t]he

9   examiner initialed each reference, indicating his consideration of the same, and

10  [unlike in the case before this Court, the Examiner] stated that he had considered <u>all</u>

11  of the cited prior art.  Absent proof to the contrary, we assume that the examiner did

12  consider the references."  <u>Molins</u>, 48 F.3d at 1184 (emphasis added).[5]  Here, unlike

13  in <u>Molins</u>, there is ample proof that the Examiner did <u>not</u> consider, did <u>not</u> initial

14  and was <u>not</u> aware of the significance of the Japanese references.

15            Broadcom's assertion that Qualcomm contends that Broadcom should

16  have volunteered an explanation for each disclosed prior art is equally without

17  merit.  (<u>Cf.</u> BC Br. 7-9.)  That is not the relevant question—at issue here is a claim

18  that Broadcom failed to tell the Examiner that much of the prior art before him was

19  irrelevant and failed to respond to a pointed request for information that was plainly

20  in Broadcom's possession, thereby leading the Examiner to believe that no prior art

21  reference in a large pile of submissions warranted closer attention.  Even setting

22  aside the duties of a patent holder to bring relevant prior art to the attention of an

23  Examiner, there is no question that a patent holder cannot, when expressly asked by

24  the PTO if it knows of "any information that might be of particular relevance",

25  

_____

26       [5] <u>Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.</u>, 106 F.
     Supp. 2d 667, 691 n.13 (D.N.J. 2000), is similarly irrelevant because there the court

27  assumed that the Examiner would "ultimately consider[]" the damaging prior art.
     <u>See, e.g.</u>, <u>Scripps Clinic & Research Foundation v. Genentech, Inc.</u>, 927 F.2d 1565,

28  1583 (Fed. Cir. 1991).  A similar assumption would be impermissible here.

1   simply sit idly by when it possesses full knowledge—and is even reminded in a

2   judicial forum—of the significance of such art.  (Lelutiu Decl. Ex. 2, Sept. 29, 2008

3   Tr. at 29:21-35:10.)  Notably, Broadcom cites no cases that have held that a patent

4   holder is under no obligation to respond to an Examiner's questions.  In fact, as

5   noted, "[t]he duty of candor embodied in 37 C.F.R. § 1.56 does <u>not</u> give the

6   applicant the power to refuse a Requirement For Information under section 1.105".

7   <u>Star Fruits</u>, 393 F.3d at 1283 (emphasis added).

8         In sum, Broadcom is not entitled to an order pursuant to Fed. R. Civ.

9   P. 12(b)(6) or 12(f) dismissing or striking Qualcomm's inequitable conduct defense

10   and counterclaim.  Because Broadcom has yet to produce any documents from the

11   files of its reexamination counsel (<u>see</u> Sankoorikal Decl. ¶ 5) and discovery is not

12   complete, Broadcom's alternative request for summary judgment should be denied.

13   <u>Zell</u>, 675 F.2d at 1049-50 (reversing a district court's grant of summary judgment

14   where discovery requests of the party opposing summary judgment remained

15   unanswered and there was nothing in the record that precluded the possibility that

16   relevant evidence might be discovered).  Finally, the record evidence now available

17   to Qualcomm shows that summary judgment is inappropriate

18       **B.**   **Qualcomm Equitable Estoppel/Waiver and Unclean Hands**

19            **Defenses and Counterclaims Should Not Be Dismissed.**

20         An accused infringer that raises equitable estoppel/waiver as a claim or

21   defense must plead three elements:  (1) that the patentee has misled the accused

22   infringer; (2) that the accused infringer relied upon the patentee's misleading acts;

23   and (3) that the accused infringer would be harmed materially if the patentee is later

24   permitted to assert any claim inconsistent with his earlier conduct.  <u>Vanderlande</u>

25   <u>Indus. Nederland BV v. I.T.C.</u>, 366 F.3d 1311, 1324 (Fed. Cir. 2004).  The

26   equitable defense of unclean hands provides that "[w]henever a party who . . . seeks

27   to set the judicial machinery in motion and obtain some remedy, has violated

28   conscience or good faith, or other equitable principle, in his prior conduct, then the

1   doors of the court will be shut against him in limine; the court will refuse to

2   interfere on his behalf, to acknowledge his right, or to award him any remedy".

3   Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933).

4          Although Broadcom does not contest that Qualcomm has properly

5   pleaded its equitable defenses and counterclaims, Broadcom nevertheless argues

6   that those defenses and counterclaims should be summarily dismissed.  Under the

7   most charitable reading, the several arguments Broadcom presents—which plainly

8   lack merit—outline a number of factual disputes whose resolution would be

9   premature at this juncture.

10          Broadcom initially asserts that "Qualcomm makes no allegation that

11  Broadcom has refused to license any third parties who sought a FRAND license to

12  the '051 patent".  (BC Br. at 2-3.)  That is wrong.  In its Amended Answer,

13  Qualcomm has alleged that Broadcom has "refused to offer licenses to its patents",

14  including the '051 Patent, and that "Qualcomm has been harmed and its business

15  disrupted by Broadcom's failure to offer FRAND licenses for the '051 patent to

16  Qualcomm and/or to direct and indirect customers of Qualcomm's products".  (Am.

17  Answer ¶ 102 (emphasis added).)  Under the notice pleading requirements

18  applicable to these defenses, Qualcomm is not obligated to identify any such third

19  parties at this stage.  In any event, Qualcomm is pursuing discovery that it believes

20  will show that Broadcom has in fact refused to license the '051 Patent to

21  Qualcomm's customers.  (Sankoorikal Decl. ¶ 8.)  Summary judgment would thus

22  be inappropriate.  Zell, 675 F.2d at 1049-50.

23          With respect to Qualcomm's own request for a license to the '051

24  Patent, Broadcom admits that it has not offered Qualcomm a license, let alone one

25  on FRAND terms.  Indeed, after Qualcomm requested that Broadcom identify its

26  terms and conditions for a license to the '051 Patent for products and equipment

27  that Broadcom contends infringe that patent (Mueller Decl. Ex. H, Nov. 3, 2008

28  Aberle Letter), Broadcom responded with a 3-page letter gratuitously accusing

1   Qualcomm of various wrongdoing, but offering no license terms (Mueller Decl. Ex.

2   J, Nov. 26, 2008 Brazeal Letter).  And, notwithstanding the assurances—in Mr.

3   Brazeal's letter and Broadcom's brief—that Broadcom "will" some day fulfill its

4   obligations to offer a license Qualcomm (BC Br. at 3), it is uncontested that

5   Broadcom's FRAND licensing commitment has not been honored to date.

6            Broadcom nevertheless seeks to justify that failure to license by

7   proclaiming that it is under no obligation to deal with Qualcomm because

8   Qualcomm's own licensing program is "anticompetitive and FRAND-violative".[6]

9   (BC Br. at 13.)  That is wrong and, most importantly, beside the point.  Qualcomm,

10  a company that has been driving innovation in the market for wireless technology

11  and holds thousands of patents that are fundamental to many wireless standards, has

12  a robust licensing program that enables competition and innovation in the market

13  for wireless telecommunications.  Indeed, far from being anticompetitive,

14  Qualcomm's licensing program has been accepted by virtually every major

15  manufacturer of wireless devices and wireless carrier in the world.  (Lelutiu Decl.

16  Ex. 12, Qualcomm Licensees.)  Qualcomm has not attempted to prevent

17  Broadcom—or any other party—from competing in the market for wireless devices.

18  Indeed, on multiple occasions, Qualcomm has offered Broadcom a non-exhaustive,

19  royalty-free license to the entire portfolio of Qualcomm's essential patents.

20  (Lelutiu Decl. Ex. 13, Jan. 15, 2009 Aberle Letter.)  In any event, under ETSI rules,

21  Broadcom's unilateral displeasure with Qualcomm's licensing program does not

22  excuse Broadcom's failure to honor its obligations to license the '051 Patent to

23  Qualcomm and its customers.  Further, the Court may not rely on bare assertions

24  that Broadcom has an excuse for its admitted nonperformance of its ETSI

25  obligations to dismiss Qualcomm's properly pleaded defenses.

26  _____

27        [6] In a rather obvious attempt to bias the Court, Broadcom has gratuitously
    included in its brief various allegations of misconduct that plainly have no
28  relevance to the motion before the Court.

1    Moreover, Broadcom's self-serving assertions that it "will" offer a

2   license to Qualcomm for the '051 Patent are directly contradicted by Broadcom's

3   public statements on the topic of licensing.  As recently as October 2008, Scott

4   McGregor, Broadcom's CEO, stated that Broadcom does not currently anticipate

5   licensing any of the patents that are the subject of its current litigation with

6   Qualcomm.  (Lelutiu Decl. Ex. 5, October 21, 2008 Earnings Conference Call

7   Transcript, at 92-93 ("[I]s Verizon [the] only . . . licensee of the ITC [and] Santa

8   Ana patents[?  Y]es, that's correct.  We certainly could look at that in the future.

9   We have not made that a business focus right now.").)  Indeed, the Court has

10  previously found that Broadcom has a history of "not licens[ing] key technology on

11  a patent-by-patent basis".  (D.I. 996 at 6.)

12    In sum, the facts currently available to Qualcomm suggest that

13  Broadcom does not in fact intend to meet its FRAND obligations.

14    Broadcom also mistakenly appears to suggest that it need not live up to

15  its FRAND commitment because Qualcomm "first inquired about a license specific

16  to the '051 patent just two days before filing its motion for leave to amend".  (BC

17  Br. at 12 (emphasis removed).)  Broadcom has, we believe, refused to license

18  Qualcomm's customers, has publicly stated that it will not license its patents and, in

19  fact, has refused to offer Qualcomm any license terms in the three months that have

20  already lapsed since Qualcomm's licensing request was made.  Under these

21  circumstances, the timing of Qualcomm's request is irrelevant.  Indeed,

22  Qualcomm's recent request for and Broadcom's recent refusal to offer license terms

23  show that there is a live, genuine dispute about Broadcom's willingness to honor its

24  commitments to ETSI that should be resolved at trial.

25    Broadcom also argues that Qualcomm's FRAND-based defenses and

26  counterclaims "can hardly be deemed ripe on the existing record" and that they

27  should be dismissed because they would "unduly expend the Court's resources and

28  unnecessarily divert the jury's and the Court's attention from the real issue[s]".

1   (BC Br. 15.)  These arguments do not withstand scrutiny.  As to the ripeness point,

2   it is hypocritical for Broadcom to assert that Qualcomm's claims "lack[] support"

3   on the existing record (BC Br. at 2), when Broadcom itself is not cooperating in

4   Qualcomm's efforts to develop evidence.  (Sankoorikal Decl. ¶ 5.)  Moreover, the

5   case Broadcom cites in support of its ripeness argument, <u>Cardenas v. Anzai</u>, 311

6   F.3d 929 (9th Cir. 2002), is not persuasive.[7]  Unlike <u>Cardenas</u>, this case involves no

7   contingencies—Broadcom has <u>already</u> refused to license Qualcomm and, we

8   believe, other third parties.[8]  Qualcomm is entitled to defend itself against

9   Broadcom's infringement claims and, at the very least, it is entitled to pursue those

10  defenses through discovery, particularly given the burdensomeness of Broadcom's

11  own discovery requests.[9]

12

13

14

15

16

17

18

19  _____

20  [7] In <u>Cardenas</u>, although the court noted that "[a]claim is not ripe for adjudication if it rests upon contingent future events", <u>id.</u> at 934, the court also found that the plaintiffs' challenge to the allocation of state funds <u>was</u> ripe. Notably, <u>Cardenas</u>, employed a ripeness standard that is not applicable to private disputes.  <u>Principal Life Ins. Co. v. Robinson</u>, 394 F.3d 665, 670-71 (9th Cir. 2005).

21

22

23  [8] Broadcom also argues that Qualcomm's defenses and counterclaims should be dismissed because they are time-consuming.  (BC Br. 15.)  Broadcom cites no authority for the proposition that a valid defense or counterclaim may be dismissed for that reason.  Moreover, the time necessary to present those claims and defenses at trial is a fraction of the time Broadcom will need for its infringement claims.

24

25

26  [9] Broadcom is pursuing a huge amount of discovery from Qualcomm, notwithstanding the representations it made to this Court on September 29, 2008. (Lelutiu Decl. Ex. 2, 9/29/2008 Tr. at 50:6-15 ("Some of the terms . . . are not even going to require further discovery. . . . [T]here is not going to be the need for an extensive amount of discovery, and we can resolve this issue.").)

27

28

1    **V.    CONCLUSION**

2            For the foregoing reasons, Qualcomm respectfully requests that this

3    Court deny Broadcom's motion.

4

5    Dated:  January 20, 2009

6                                                    CRAVATH, SWAINE & MOORE LLP,

7

8                                        By:    /s/ Keith Hummel
                                                Evan R. Chesler
9                                               Keith R. Hummel
                                                Richard J. Stark
10                                              Teena-Ann V. Sankoorikal

11                                              Attorneys for Defendant and
                                                Counterclaimant
12                                              QUALCOMM INCORPORATED

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28